**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JOHN EDGAR WILLIAMS, IV,**<br><br>**Defendant.** | **Case No. 25-CR-197-JFH-1** |

**OPINION AND ORDER**

Before the Court is a Motion to Suppress [Dkt. No. 448] ("Motion") filed by Defendant John Edgar Williams, IV ("Williams"). The United States of America ("Government") opposes the Motion. Dkt. No. 473. For the following reasons, Williams' Motion is DENIED.

**BACKGROUND**

On June 3, 2025, a federal grand jury indicted Williams with conspiracy to commit sex trafficking, transporting an individual for prostitution, and interstate travel to aid racketeering. Dkt. No. 2. A warrant was issued for his arrest that same day. Dkt. No. 4. Approximately two weeks later, on June 16, 2025, federal and local law enforcement stopped and arrested Williams as he drove on a public roundabout between the Tulsa Public Library and Tulsa County Courthouse. His Motion concerns the seizure of his vehicle following his arrest.

According to the evidentiary hearing testimony of Tulsa Police Department ("TPD") Investigator Summers ("Summers"), local law enforcement began investigating Williams after Summers—while working undercover—learned of Williams' potential involvement in a local commercial sex transaction. Pursuant to that investigation, law enforcement began tracking Williams' travels from Tulsa to Dallas in a white Ford Expedition. Because of his interstate travel

to Dallas, federal law enforcement and the Dallas Police Department ("DPD") began assisting in the investigation.

Summers testified as to his knowledge and personal involvement in some of those joint investigation activities. For example, Summers personally reviewed social media accounts and cell phone evidence that pertained to commercial sex transactions that Williams was allegedly involved in. Summers also testified that:

> There was physical surveillance conducted. When we would say, find an ad posted with a victim associated with Mr. Williams or we believed to be associated with Mr. Williams, we attempted to set up dates with those victims to see if potentially Mr. Williams would arrive and deliver the person to the date. We also received tips from patrol officers that led us to physical surveillance where Mr. Williams and his vehicle were on site where known commercial sex workers believed to be associated with Williams was located.

According to Summers, the vehicle spotted during this physical surveillance was the white Ford Expedition that Williams primarily drove throughout the investigation. Ultimately, on June 15—the day before Williams' arrest—federal and local law enforcement spread out to different target locations that Williams and his co-defendants frequented to apprehend him.

Law enforcement stopped and arrested Williams on a public roundabout near one of those locations on June 16. At that time, Williams had a female passenger in his vehicle named "A.A." Prior to the arrest, law enforcement already believed A.A. to be one of Williams' victims and active commercial sex workers. This belief was based on the officers' monitoring of commercial sex advertisements, social media posts, communications, and their own physical surveillance. Summers knew of this evidence and shared this belief prior to Williams' arrest. At some point during the encounter, Summers offered her victims' services and transportation away from the scene. She refused both but asked if she could retrieve her purse from the vehicle. Summers asked Williams if he consented to the officers retrieving the purse. Williams consented, so Summers

retrieved the purse for A.A. Summers also gave her a subpoena before she left the scene on her accord. Although Williams claims in his Motion that he told the officers A.A. could take the vehicle, there was no evidence of this conversation presented at the evidentiary hearing. Regardless, Summers did not ask A.A. or Williams if she could take the car.

At some point while Williams was still present, officers moved the vehicle from the public roundabout to another public street nearby. Although officers moved the vehicle to avoid congesting the roundabout, the second location also blocked the gate to a parking garage near the Tulsa County Courthouse and Tulsa Police Station. Ultimately, Summers ordered the vehicle to be towed from this second location and impounded with a "hold." Summers intended to hold the vehicle pending a search warrant because he believed the vehicle could contain evidence of sex trafficking, including lingerie, sexual lubricants, condoms, receipts for those items, receipts for motels and hotels, phones, and toll receipts for interstate travel.

Pursuant to TPD policy, another officer conducted an inventory search of the vehicle prior to the tow. Based on this policy, that officer's job was to simply note items of value in the car that could be lost or destroyed. This was done to protect Williams from potential damage to or loss of property within his vehicle and to protect TPD from liability for any damage or loss to that property. The officer noted that the car contained a backpack, but he did not search it or any compartments within the vehicle. The vehicle was then towed to a secure lot with TPD.

A United States Magistrate Judge issued a federal search warrant for the vehicle on July 3, 2025. Pursuant to that warrant, officers searched the vehicle on July 7, 2025. During that search, officers found a Sig Sauer Model P938 pistol in a locked backpack. A later indictment charged Williams with unlawful possession of this firearm as a felon alongside his sex-trafficking charges. *See* Dkt. No. 269 at 19.

## STANDARD

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "A defendant seeking to suppress evidence based on a warrantless seizure of his property bears the burden of proving the same." *United States v. Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018). If the defendant meets his burden of establishing a warrantless seizure, the burden shifts to the Government to establish an exception to the Fourth's Amendment' warrant requirement. *Id.*; *see also United States v. Sporleder*, 635 F.2d 809, 813 (10th Cir. 1980).

## ANALYSIS

### A. The impoundment was constitutional based on the probable cause exception.

Williams moves to suppress "all physical evidence" and "oral statements" obtained from the warrantless impoundment of his Ford Expedition on June 16, 2025. Dkt. No. 448.[1] In support, he argues the impoundment did not qualify for the "community caretaking exception," which allows police officers to warrantlessly impound a vehicle when impoundment is necessary to protect public safety and promote traffic efficiency. *See South Dakota v. Opperman*, 428 U.S. 364 (1976). Instead, relying on *United States v. Woodard*, 5 F.4th 1148 (10th Cir. 2021), he contends the impoundment was simply a pretext to search for evidence of a crime.

The Government argues that Defendant targets the wrong Fourth Amendment exception. Instead, the Government maintains that the officers lawfully impounded Williams' vehicle under the "seizure of a vehicle pending a search warrant exception." Dkt. No. 473 at 3. Under this

[1] Neither party identified any statements or items that should be suppressed beyond the firearm.

exception, "[w]hen . . . the police have probable cause to believe a vehicle contains contraband or evidence of criminal activity, the police may seize it without a warrant and hold it for 'whatever period is necessary to obtain a warrant for the search.' " *United States v. Shelton*, 817 F. App'x 629, 634 (10th Cir. 2020) (quoting *Chambers v. Maroney*, 399 U.S. 42, 51–52 (1970)). Accordingly, the critical issue for this exception is whether "the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that" Williams' vehicle contained contraband or evidence of criminal activity. *Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017) (citations and quotations omitted).

Summers had probable cause here. Summers had extensive knowledge of and personally participated in the investigation of Williams, which included the examination of commercial sex advertisements, social media posts, and physical surveillance evidence. This included physical surveillance of Williams and his Ford Expedition on site(s) where commercial sex workers believed to be associated with Williams were located. Based on that evidence, Summers also suspected that A.A. was a commercial sex worker of Williams' before his June 16 arrest. And Summers may have even known that she was traveling with Williams on June 16 because he already had a subpoena prepared for her. Regardless, once Summers recognized her in the car with her alleged trafficker, it was more than reasonable for him to believe that car contained evidence of her trafficking. And, independently, because Summers believed the Ford Expedition that Williams drove on June 16 was the same vehicle spotted at sites where commercial sex workers believed to be associated with Williams were located, it was reasonable for him to believe the vehicle contained evidence of Williams' charged offenses as well. Either way, Summers had

probable cause to believe the Ford Expedition contained evidence of Williams' charged offenses. Thus, the impoundment pending a search warrant was lawful.

**B. *Woodard* does not apply, and even if it did, its application favors the Government.**

Williams relies on *Woodard* to argue that the impoundment was unlawful. But his reliance on *Woodard* is misplaced.

In *Woodard*, officers performed a traffic stop to serve the defendant with a protective order and execute an arrest warrant for public intoxication. 5 F.4th at 1150-51. The officers arrested him after he parked his car in a parking lot on private property. *Id.* Officers denied his request to have someone else pick up the car. *Id.* Then, the officers impounded and searched his vehicle. *Id.* During that search, officers found evidence of drug dealing. *Id.* Based on that evidence, the police obtained a search warrant to access his cellphone. *Id.* Those text messages provided further evidence of drug dealing, leading to federal charges unrelated to his original arrest warrant for public intoxication. *Id.* He then moved to suppress the evidence found during that stop, arguing that the officers impounded the vehicle as a pretext to investigate him for a crime. *Id.*

Because the vehicle was seized on private property, the Fourth Amendment's "heightened requirements" allowed for impoundment only if (1) the car blocked traffic, (2) the car posed an imminent threat to public safety, or (3) the impoundment was justified by a standardized policy and a reasonable, non-pretextual rationale of community caretaking. *Id.* at 1152 (citing *United States v. Sanders*, 796 F.3d 1241, 1249 (10th Cir. 2015). Relying on the police department's impoundment policy—which generally restricted impoundment to removal of vehicles from a public way and created a limited exception allowing for impoundment from private property when the traffic stop followed an offense committed on a public way—the Government argued this third

scenario applied. *Id.* But this policy did not justify impoundment because the vehicle was not seized on a public way, nor did the stop follow an offense committed on a public way. *Id.*

Even if the policy applied, the Tenth Circuit found pretext based on five factors. *Id.* at 1155. First, "the car was on private property, where '[p]ublic safety and convenience [were] less likely to be at risk.' " *Id.* at 1155 (quoting *United States v. Venezia*, 995 F.3d 1170, 1178 (10th Cir. 2021)). Second, the officers failed to consult the property owner on whether to move the car. *Id.* at 1155-56. Third, the officers denied the defendant's request to have someone else get the car and failed to explain why. *Id.* at 1156-58. Fourth, the car was not impounded as evidence of a crime. *Id.* at 1158. Finally, the defendant did not consent to impoundment. *Id.* Accordingly, the Tenth Circuit held the impoundment was unconstitutional.

*Woodard* is distinguishable for several reasons. Critically, the Government in *Woodard* "conced[ed] that the car was not implicated in a crime." *Id.* at 1158. So, it instead argued that the warrantless impoundment was constitutional under the community-caretaking exception. It did not assert, as the Government does here, that the officers constitutionally impounded the vehicle *because* they suspected the car contained criminal evidence of Williams's charged offenses. Dkt. No. 473 at 3. Additionally, the seizure in *Woodard* occurred on private property, thus triggering the Fourth Amendment's "heightened requirements." But here, the seizure occurred on a public street, where public safety and convenience were more likely to be at risk, and where the invasion of Williams' privacy was more limited. *See G. M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977) (stating that "[t]he seizures of automobiles . . . on public streets, parking lots, or other open places did not involve any invasion of privacy"). So, *Woodard*'s framework does not fit the issues in this case.

But even if *Woodard* applied, most of its five factors favor the Government. First, as stated above, the officers seized Williams' vehicle from a public street, not a private parking lot. And "if a vehicle is obstructing or impeding traffic on public property [as was the case here], it can be impounded regardless of whether the impoundment is guided by standardized procedures." *Sanders*, 796 F.3d at 1249 (citing *Opperman*, 428 U.S. at 369). Second, because the vehicle was on a public street, there was no private property owner to consult. For this third factor, Defendant argues the officers had an affirmative duty to find an alternative to impoundment. But as the Tenth Circuit stated:

> We express no opinion on whether the police have a duty to let someone else pick up a car when the driver is arrested. Neither the parties nor the district court has addressed the possibility of such a duty, and for good reason: It has nothing to do with the third pretext factor, which addresses the existence of alternatives to impoundment. Regardless of whether the police have a duty to let someone else pick up or move a car, the police either have alternatives or they don't.

*Woodard*, 5 F.4th at 1157. So, the question is narrow—were there alternatives or not? Although Williams alleged in his Motion that he asked for A.A. to take the vehicle, there was no evidence of that request presented at the hearing. And even if he asked about A.A., she left the scene of her own accord after denying other offers of transportation. So, the Court is not convinced that giving her the car was even an option. Furthermore, unlike *Woodard*, there was no evidence presented that Williams asked to call another person to pick up the car. Because there was no other evidence of an alternative, this third factor favors the Government. The fourth factor also favors the Government because, as explained above, it already suspected the vehicle of containing evidence of Williams' offenses charges in the Indictment. However, Williams did not consent to impoundment (because Summers did not ask him), so this fifth factor weighs against the Government. Because most of these factors favor the Government, the impoundment was constitutional even under *Woodard*.

**C. The searches were constitutional.**

Williams also argued that the "subsequent search" was "unconstitutional." Dkt. No. 448 at 2. But he did not distinguish between the "inventory search" or the search following the issuance of a federal search warrant by a United States Magistrate Judge. He also does not explain why either of these searches were unconstitutional. Out of an abundance of caution, the Court will briefly address both searches.

"The Supreme Court has held that police are entitled to conduct an administrative search of a vehicle in order to secure and inventory its contents when the vehicle has been lawfully impounded or taken into police custody." *United States v. Thomas*, 73 F. App'x 365, 368 (10th Cir. 2003) (citing *Opperman*, 428 U.S. at 373); *see also Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (stating that inventory searches "are now a well-defined exception to the warrant requirement of the Fourth Amendment"). For the Government to avail itself of this "inventory search" exception, it must satisfy two prongs—(1) the inventory search was "conducted according to standardized procedures;" and (2) the policy was designed to produce an inventory and serve the administrative purposes of such searches. *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003) (quoting *United States v. Haro–Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997).

The Government has satisfied its burden here. The inventory search was conducted pursuant to a TPD inventory policy designed to protect the vehicle's owner/driver from potential damage to or loss of property within the vehicle and to protect TPD from liability for any damage or loss of that property. Based on that policy, the inventory officer's job was to simply note items of value in the car that could be lost or destroyed. And that's what he did—the officer noted on the inventory paperwork that a backpack was in the vehicle, but he did not search it or any compartments within the vehicle. Accordingly, this inventory search was lawful.

Lastly, a search conducted pursuant to a search warrant is presumptively lawful. *See United States v. Banks*, 884 F.3d 998, 1011 (10th Cir. 2018) ("A search or seizure is presumptively reasonable if it's based on a warrant supported by probable cause."). Accordingly, Williams bears the burden of demonstrating the search warrant's infirmities. *See United States v. Esser*, 451 F.3d 1109, 1112 (10th Cir. 2006). He has not articulated any reason why the search warrant was unsupported by probable cause or why it was otherwise invalid. So, the Court finds that the search conducted pursuant to the search warrant was constitutional.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Williams' Motion to Suppress [Dkt. No. 448] is DENIED.

Dated this 10th day of November, 2026

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE