**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JOHN EDGAR WILLIAMS, IV, *et al.*,**<br><br>**Defendants.** | **Case No. 25-CR-197-JFH** |

**OPINION AND ORDER**

Before the Court are four Motions in Limine filed by the United States of America's ("Government") [Dkt. No. 440]; Defendant Jeremy Mindez Ruff [Dkt. No. 439]; Defendant Savannah D'Naisha May Gage [Dkt. No. 446] and Defendant John Edgar Williams, IV [Dkt. No. 447]. For the following reasons, the Government's Motion is GRANTED, and Defendant Ruff, Gage, and Williams's Motions are respectively GRANTED IN PART, DENIED IN PART, AND HELD IN ABEYANCE IN PART.

**BACKGROUND**

On June 3, 2025, a federal grand jury indicted eight Defendants—(1) John Edgar Williams, IV, (2) Jeremy Mindez Ruff, (3) Savannah D'Naisha May Gage, (4) Nevaeh Charise Cox, (5) Trinity Rinique Goudeau, (6) Shavari Melton, (7) Vanessa Lashay Bell, and (8) Ashley Charles, with conspiracy to commit sex trafficking and various other related charges. Dkt. No. 2.[1] The Defendants' trial is currently set for December 7, 2026. Dkt. No. 391. In preparation for trial, the Government and Defendants Ruff, Gage, and Williams all filed various Motions in Limine. The Court addresses each of those Motions below.

---

[1] The operative indictment is a Third Superseding Indictment filed on February 3, 2026. Dkt. No. 269. Additionally, Defendants Melton and Bell have since pled guilty. *See* Dkt. Nos. 330, 361.

## ANALYSIS

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 Fed. App'x 337 (10th Cir. 2010) (quotations and citations omitted). In many instances, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context. *Id.* "A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on *all* potential grounds." *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644-GKF, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (citations and quotations omitted).

### A. THE GOVERNMENT'S MOTION IN LIMINE [Dkt. No. 440]

The Government seeks to exclude two categories of evidence and argument. First, the Government seeks to prohibit Defendants and their counsel from "introducing any evidence, making any statement, or asking any questions regarding potential penalties if they are convicted." Dkt. No. 440 at 2. The Government argues the jury has no sentencing function in this case, and admission of this evidence would open the door to compromised verdicts, confuse the issues to be decided, and would be an improper attempt to invoke sympathy. *Id.* at 2-3 (citing *Shannon v. United States*, 512 U.S. 573, 579 (1994); *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980); 10th Cir. Crim. Jury Instr. 1.04 and 1.20)). This is consistent with the standard instruction this Court gives in every jury trial. *See* Tenth Circuit Pattern Instruction 1.20. Defendants are prohibited from introducing evidence to the jury regarding potential punishment.

Second, the Government seeks to prohibit Defendants from arguing that the Government must prove Defendants actually knew the age of the minor victims. Dkt. No. 440 at 3. The Government points out that, under 18 U.S.C. § 1591, it can establish the Defendants' *mens rea* by (1) showing the Defendants had actual knowledge of the victims' age; (2) showing the Defendants recklessly disregarded the victims' underage status; *or* (3) by presenting evidence that the Defendants had a reasonable opportunity to observe the victims. *Id.* (citing *United States v. Duong*, 848 F.3d 928, 933 (10th Cir. 2017)). Simply put, the Government wants Defendants to accurately state the law to the jury. The Court will grant the Government's request but notes that Defendants are not prohibited from arguing that they lacked actual notice of the victims' age.

Accordingly, the Government's Motion in Limine [Dkt. No. 440] is GRANTED.

## B. DEFENDANT RUFF'S MOTION IN LIMINE [Dkt. No. 439]

### 1. Julia Vanourny's Prior Statements

The Court will now turn to Defendant Ruff's Motion in Limine. Dkt. No. 439. Ruff's first request concerns Julia Vanourny's two previous interviews to law enforcement in June and August 2025 and her grand jury testimony in September 2025. *Id.* at 1. If Vanourny does not testify at trial, Ruff moves to exclude Vanourny's previous interviews and grand jury testimony based on the Confrontation Clause. *Id.* at 2. If she testifies, Ruff asks the Court to ensure her prior statements "independently satisfy Rule 801(d)(1) or another applicable exception." *Id.* Among other requests, Ruff also asks for "an advance, passage-specific proffer and ruling . . . and, if the Government seeks to use the challenged June interview substantively, a Rule 104 hearing concerning the circumstances of the statements." *Id.*[2]

---

[2] Ruff also requests "exclusion of inadmissible or needlessly cumulative prior statements" and "disclosure of required impeachment and favorable information concerning threats, promises, immunity, or benefits." Dkt. No. 239 at 2. This former request is too vague for the Court to grant

In response, the Government concedes that it "will not introduce statements of non-testifying witnesses for their truth," but argues that "[t]he propriety of out-of-court statements by victims and witnesses should [ ] be reserved for trial." Dkt. No. 467 at 6. So, the Government will introduce Vanourny's prior statements for their truth only if she testifies at trial, and those statements will be admissible only if they satisfy the Federal Rules of Evidence. But because the admissibility of her prior statements may rely on Vanourny's testimony at trial, *see e.g.*, Fed. R. Evid. 801(d)(1), it is more appropriate to wait for that trial testimony before ruling on the admissibility of her prior statements.

Nevertheless, to make trial more efficient, it would be helpful for the parties to provide supplemental briefing concerning this evidence within their respective trial briefs. In particular, the parties should (1) briefly summarize the statements made during Vanourny's interviews and grand jury testimony, (2) address the circumstances in which she made these statements, including whether the statements were made under penalty of perjury, and (3) address any Federal Rules of Evidence that may admit or exclude these prior statements. At that point, the Court will be in a better position to efficiently rule on the admissibility of these statements at trial if it becomes necessary to do so. Therefore, the Court holds this request IN ABEYANCE.

**2. Agent Jones's Expert Opinions**

Ruff's second request concerns the expert testimony of Government witness, Special Agent John Jones. Dkt. No. 439 at 2-3. Among other opinions, the Government indicated in its Rule 16 Notice that Agent Jones will testify "about his individualized experience interviewing sex

---

relief. Ruff may reraise these objections at trial. The latter request seems to request information that the Government must already provide under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). If Ruff believes the Government has not satisfied its *Brady* and *Giglio* obligations, Ruff should raise this issue forthwith.

trafficking suspects, commercial sex customers, victims, and witnesses, and the methodologies he used in the interviews" and "his opinions regarding Ruff's responses throughout the interview based upon his training and experience." Dkt. No. 426 at 1-2. Agent Jones will also "testify to being a part of the team that arrested Ruff," that "Ruff yelling information under the door to J.V. is consistent with the behavior of other sex traffickers and their victims," and that "Ruff was attempting to give answers to J.V. consistent with his story and to avoid culpability." *Id.* at 2-3.

Ruff acknowledges that Agent Jones may describe his firsthand observations of Ruff but argues that he cannot testify that Ruff "lied, was guilty, or exhibited a profile establishing guilt." Dkt. No. 439 at 2. The Government agrees to "only elicit testimony about [Agent Jones's] training, experience, and firsthand observations" and will not elicit testimony that "Ruff lied, was guilty, or exhibited a profile establishing guilt." Dkt. No. 467 at 4. Accordingly, this request is GRANTED.

**3. Limits on Law-Enforcement Expert Testimony**

Next, Ruff seeks to exclude "opinions that witnesses are truthful or deceptive; investigative summaries repeating inadmissible accusations; conclusions that Mr. Ruff committed trafficking; unsupported interpretations of slang or communications; and cumulative testimony from multiple experts on the same subjects." Dkt. No. 439 at 3. The Government concedes that it will not "elicit testimony from experts or law enforcement about their opinions of the truthfulness or deceptiveness or witnesses or defendants." Dkt. No. 467 at 4. So, that portion of his request is GRANTED. However, the remaining topics Ruff seeks to exclude are simply too vague for the Court to grant relief. Accordingly, the remainder of this request is DENIED. Ruff may reraise any of those objections at trial.

Ruff also "requests a focused Rule 104 proffer identifying each disputed opinion, its basis, and the witness's qualifications, with exclusion of opinions not satisfying Rules 702 and 704(b)."

Dkt. No. 439 at 3. Again, this request is too vague for the Court to grant relief. To the extent Ruff refers to Defendant Gage's Objection to the Government's Rule 16 Notices [Dkt. No. 451], the Court has addressed those objections in a separate order. For now, the Court DENIES this request.

**4. Co-Conspirator and Non-Testifying Co-Defendant Statements**

Ruff's fourth request seeks a preliminary ruling on the admissibility of co-conspirator and non-testifying co-defendant statements. Dkt. No. 439 at 3-4. The Court will address the admissibility of these statements in a separate Order regarding the Government's *James* proffer.

**5. Out-of-Court Statements of Minors and Other Witnesses**

Ruff's fifth request concerns prior statements made by K.R., R.M., Journey Myers, and Nayla Swafford. Dkt. No. 439 at 4. Similar to Vanourny's prior statements, Ruff seeks to exclude these statements based on the Confrontation Clause and/or the Federal Rules of Evidence. *Id.* Ruff also requests "advance review, outside the jury's presence, of J.M.'s firearm and threat allegations and of the disputed March 26, 2025 message attributed to N.S," as well as an order requiring the Government to "identify the firsthand basis and dates of J.M.'s asserted observations concerning R.M." *Id.*

The Court agrees with the Government that resolution of Ruff's Confrontation Clause and hearsay arguments are better suited for trial. Nevertheless, to make trial more efficient, it would be helpful for the parties to provide supplemental briefing concerning this evidence within their respective trial briefs. In particular, the parties should (1) briefly summarize the statements made, (2) address the circumstances in which they were made, including whether the statements were made under penalty of perjury, and (3) address any Federal Rules of Evidence that may admit or exclude these prior statements. At that point, the Court will be in a better position to efficiently

rule on the admissibility of these statements at trial if it becomes necessary to do so. So, the Court holds this request IN ABEYANCE.[3]

**6. Pleas, Cooperation, and Vouching**

Sixth, Ruff requests that any plea or cooperation evidence be confined to a proper purpose, accompanied by an appropriate limiting instruction, and that the Government not personally vouch for witness credibility or imply corroboration outside the record. Dkt. No. 439 at 5. This request is GRANTED to the extent that it asks the Government to follow the law. *See United States v. Nickl*, 427 F.3d 1286, 1294 n. 2 (10th Cir. 2005) ("A prosecutor may properly use a codefendant or coconspirator's guilty plea to aid the jury in its assessment of the codefendant or coconspirator's credibility, but may not use the guilty plea as substantive evidence of a defendant's guilt."). Ruff may object to any of the issues he identifies in this request, and he may request a limiting instruction if necessary.

**7. Registration Stipulation and Unrelated Criminal History**

Seventh, Ruff offers to stipulate that "he was legally required to register as a sex offender during the periods alleged in Counts Eighteen and Nineteen." Dkt. No. 439 at 5. He also requests, pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997), "that the Government establish that status through the stipulation without introducing the name, nature, or inflammatory details of the underlying Nevada conviction unless independently admissible." *Id.* The Government agrees to this request. Dkt. No. 467 at 4. So, this request is GRANTED.

Ruff also asks for "an advance ruling before reference to unrelated arrests, charges, convictions, failures to appear, or drug, prostitution, registration, or resisting allegations." Dkt.

---

[3] To the extent Ruff asks for a pretrial proffer from the Government of the facts and theories it plans to rely upon at trial, that request is denied. To the extent Ruff believes the Government has discovery in its possession that it has not provided, Ruff should advise the Court forthwith.

No. 439 at 5. The Government agrees not to reference potential uncharged "bad acts" for which it has not already filed a notice. Dkt. No. 467 at 4. The Court shall rule on the Government's Prior Acts Notices pertaining to Ruff [Dkt. Nos. 422-423] in a separate order.

**8. Jail Calls and Electronic Communications**

Ruff's eighth request concerns evidence of jail calls and electronic communications that the Government may use at trial. Essentially, Ruff asks for the Court to set a deadline for the Government to identify calls, timestamps, excerpts, transcripts, and proposed redactions of this evidence. Dkt. No. 439 at 6. Ruff also asks for an order requiring the Government to identify the intended exhibit, source, participants, and basis for attributing authorship for the electronic communications. The Court orders the parties to confer about these issues and report any pending disputes forthwith.

**9. Co-Defendant Evidence and Graphic Exhibits**

Ruff's ninth request concerns evidence attributable to his co-defendants that he argues is not "automatically attributable" to him. Dkt. No. 439 at 6. Specifically, before admitting "Count Sixteen firearm evidence, Count Five material, or conduct involving MV3 under Count Fourteen" at trial, Ruff asks the Court to provide a relevance and Rule 403 ruling on that evidence. *Id.*[4] He also argues that "[t]he ATF report captioned 'RUFF, Jeremy et al.' should not be shown in a manner suggesting a firearm connection that has not been established." *Id.* (citing Dkt. Nos. 269, 401-2).

The Court agrees with the Government that specific limiting instructions are appropriate to address any potential prejudice or "spillover" effect from this evidence. Dkt. No. 467 at 5.

---

[4] Count Sixteen charges **Williams** with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8). Dkt. No. 269 at 19. Count Five charges **Cox** with distribution of child pornography in violation of 18 U.S.C. §§2252(a)(2), 2252(b)(l). *Id.* at 8. Count Fourteen charges **Gage, Goudeau, and Melton** with sex trafficking MV3—an alleged minor—in violation of 18 U.S.C. §§ 1591, 1591(b)(2). *Id.* at 17.

Additionally, even though Ruff does not have a substantive charge for illegal firearm possession, he is charged with conspiring to use means and threats of force to ultimately cause another to be engaged in a commercial sex act. *See* Dkt. No. 269 at 3. So, his own firearm possession is likely relevant for his conspiracy charge, as is his potential knowledge of other Defendants' firearm possession. Moreover, evidence establishing that MV3 was sex trafficked from March 20, 2025, to April 1, 2025, by three other Defendants in Count Fourteen may be relevant for establishing that Ruff also trafficked MV3 from February 20, 2025, to March 26, 2025. But for now, the Court will refrain from ruling on the admissibility of this evidence against Ruff until the Government has laid a proper foundation. So, the Court will hold Ruff's request IN ABEYANCE.

In this same request, Ruff also asks for an order requiring the Government to "identify all sexually explicit photographs, advertisements, and videos intended for trial" and to "submit disputed material for advance review." Dkt. No. 439 at 6. The Court orders the parties to confer on this issue and present any remaining disputes forthwith.

**10. Prejudicial Labels and Terminology**

Finally, Ruff requests redaction of "Ruff Roulette" from trial exhibits and an order prohibiting use of that term at trial. Because the Government agrees to redact "Ruff Roulette" from any materials presented to the jury, the Court will GRANT that request. *See* Dkt. No. 467 at 4. However, Ruff also requests an order prohibiting the Government and its witnesses from referencing "a complaining witness as Mr. Ruff's 'victim'" or by calling Ruff a "principal trafficker." Dkt. No. 439 at 7. The Government does not state whether it seeks to use the terms "victim" or "principal trafficker" as they pertain to Ruff, although it does oppose Defendant Gage's attempts to prohibit the terms "victim" and "trafficker." Dkt. No. 467 at 8.

Several courts have recognized that the repeated use of the term "victim" may be prejudicial.[5] Other courts have acknowledged that use of the term "victim" holds limited probative value. *See United States v. Garcia-Limon*, No. CR 21-0032 RB, 2022 WL 3334498, at *1 (E.D. Okla. May 16, 2022) ("Moreover, there is virtually no probative value in allowing the government to use the term 'victim' to describe [the individual]."); *see also United States v. Ehrens*, No. CR-15-200-C, 2015 WL 7758544, at *2 (W.D. Okla. Dec. 1, 2015) (finding that there was "no need by any party to refer to [the alleged victim] by any particular descriptor other than her name")). Based on these authorities, the Court prohibits the Government from referring to the alleged victims in this case as "victims" in opening statements or throughout the presentation of evidence. However, because the Government may argue in closing that it has met its burden to establish Ruff's guilt, it would not be unfairly prejudicial to allow the Government to follow this argument to its logical conclusion by referring to these individuals as "victims." So, the Government may use "victim" in closing argument only.

Neither party cites, and the Court has not found, any caselaw discussing the relevancy and prejudice of the term "principal trafficker." However, several courts have allowed the prosecution to refer to the defendant as a "smuggler," "dealer," or "trafficker." *See United States v. Williams*, 726 F.2d 661, 664 (10th Cir. 1984) (holding that repeated characterization of the defendant as a

---

[5] *See United States v. Sena*, No. 19-CR-01432, 2021 WL 4129247, at *1 (D.N.M. Sept. 9, 2021) (recognizing that the term "victim" "is prejudicial when the core issue at trial is whether a crime has been committed—and, therefore, whether there is a victim."); *Connecticut v. Cortes*, 851 A.2d 1230, 1239-40 (Conn. App. Ct. 2004), *aff'd*, 885 A.2d 153 (Conn. 2005) (holding that jury charges using the term "victim" instead of "alleged victim" violated a defendant's due process right to a fair trial); *Talkington v. Texas*, 682 S.W.2d 674, 674 (Tex. App. 1984) (holding that the use of the term "victim" in court's rape charge was reversible error when the issue at trial was whether complainant consented to sexual intercourse); *New York v. Davis*, 423 N.Y.S.2d 229, 230 (N.Y. App. Div. 1979) ("By referring in its charge to the complainant as the 'victim' and to the defendant as the 'perpetrator', the court impermissibly insinuated to the jury that the complainant was the victim of injuries resulting from acts committed by the defendant.").

"drug smuggler" did not deprive defendant of a fair trial because "the references were accurate" based on the evidence presented); *see also United States v. Hall*, No. 18-CR-409, 2023 WL 5103966, at *9 (N.D. Ohio Aug. 9, 2023) (stating that prosecutor's use of the term "drug trafficker" and "drug dealer" in opening and closing statements did not constitute prosecutorial misconduct); *but see United States v. Richards*, 719 F.3d 746, 764 (7th Cir. 2013) (finding that prosecutor's use of "drug dealer" and "drug trafficker" during closing arguments prejudiced defendant because it improperly relied on propensity evidence to support the use of those terms). Furthermore, unlike the term "victim," which would simply be used to describe Ruff's complaining witness, "principal trafficker" carries a more relevant meaning, as it designates Ruff as having a more significant role in the conspiracy. So, the Court will not categorically prohibit the Government from referring to Ruff as a "principal trafficker."

Nevertheless, the danger of unfair prejudice warrants some limitations on the Government's use of that term. During opening statements and throughout its presentation of the evidence, the Government may state and offer evidence that Ruff had a "principal" role in the trafficking conspiracy. But the Government cannot refer to him as a "principal *trafficker*" at those points. Once it has presented all of its evidence against Ruff, it would not be unfairly prejudicial to allow the Government to succinctly summarize his role in the conspiracy by referring to him as a "principal trafficker" in closing arguments.

### C. DEFENDANT GAGE'S MOTION IN LIMINE [Dkt. No. 446]

The Court now turns to Defendant Gage's Motion in Limine. Dkt. No. 446. Her Motion is divided into six broad categories, all of which the Court will examine below.

**1. Other Act Evidence**

The Government did not submit a notice of its intention to admit Gage's prior bad acts. So, Gage moves to exclude all "other-act evidence," including several specific examples of uncharged conduct under Rules 404(b) and 403. Among these examples, Gage moves to exclude:

- Text messages about harming or killing Christopher Ruff'
- Alleged robberies;
- Drug evidence other than Percocet, including alleged cocaine sales, encouraging cocaine use, "distributor" characterizations, and marijuana;
- Firearms not charged against Gage;
- Uncharged allegations from June 2025;
- Jail communications and any alleged "note" or obstruction, which have not been produced;
- Comments about, and photographs of, police officers; and
- References to casinos or gambling.

Dkt. No. 446 at 1-3. However, she provides no context for this alleged evidence, nor does she provide any reason as to why this evidence should be excluded other than conclusively citing to Rules 404(b) and 403. Dkt. No. 446 at 2. Because the Court cannot adequately determine whether this evidence is admissible on any grounds, her request is DENIED. Gage may reraise her objections to this evidence at trial.

Next, if the Government offers evidence that Gage gave Percocet to J.M. or N.S, Gage asks that the Court (1) "limit that evidence to Count Twelve, with a limiting instruction;"[6] (2) bar witnesses from characterizing Gage as a drug "dealer" or "distributor;" and (3) "permit her to respond with evidence of the source of context of her own Percocet use," including Defendant Ruff's role in that use. Dkt. No. 446 at 3. The Government intends to use this evidence, but it

---

[6] Count Twelve charges Gage and Goudeau with sex trafficking J.M. in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1). Dkt. No. 269 at 15.

agrees not to characterize her as a "dealer" or "distributor of narcotics." Dkt. No. 467 at 7. So, Gage's request to prohibit the Government from using those terms is GRANTED. The parties should confer about her other requests and report any pending disputes in their trial briefs. Until then, her first and third requests are HELD IN ABEYANCE.

If the Government argues that "videos of an assault were shown to an alleged victim as a threat and are therefore relevant to coercion in Count Twelve," then Gage requests that evidence be (1) "limited to Count Twelve, with a limiting instruction;" (2) "limited to the specific video actually shown to a charged victim, with foundation laid outside the jury's presence; (3) "limited in length, with audio limited;" and (4) "excluded on every other count." Dkt. No. 446 at 3. Like above, the Court orders the to confer on these requests and report any pending disputes forthwith. Until then, these requests are HELD IN ABEYANCE.

Finally, Gage contends that "[v]ideos and photographs not shown to any charged victim should be excluded entirely, including the 'unknown female' videos and the photograph of a masked person holding a pistol." Dkt. No. 445 at 3. However, she provides no specific reason as to why this evidence should be excluded. Because the Court cannot adequately determine whether this evidence is admissible on any grounds, her request is DENIED. Gage may reraise her objections to this evidence at trial.

**2. Character Evidence and Labels**

Next, Gage asks for an order prohibiting the Government and its witnesses from introducing several types of character evidence and inflammatory labels.

*Gage's Children*. Gage moves to prohibit the Government from "referring to her children, their presence at any event, or her parenting, unless she opens the subject." Dkt. No. 446 at 4. The Government agrees not to "paint Gage as a bad parent." Dkt. No. 467 at 9. However, the

Government emphasizes that Gage and Ruff share children, and this fact is critical to identifying Ruff as Gage's "bd" or "baby daddy" in communications where she describes his victims, methods, travel, and other aspects of his role in the conspiracy. *Id.* The Court agrees that the fact that Ruff and Gage share children is admissible for identifying Ruff in these communications, but the children's presence at any event would be inadmissible for this purpose.

The Government also argues the children were present for various interactions with law enforcement and at several commercial sex activities, and several police reports document their presence. *Id.* So, the Government contends that evidence of the children's presence "may show the consistency of officer testimony and reliability of [the officers'] recollection." *Id.* However, the children's presence with law enforcement may cause a juror to wonder why the child was there in the first place. And if the answer to that question is because the child was with Gage at the scene of illegal activities, a juror is likely to think negatively of Gage's parenting. Nevertheless, the Court will not categorically prohibit the Government from admitting evidence of the children's presence at this stage. Instead, the Government should approach the bench and request permission from the Court before attempting to admit any evidence of the children's presence.

*Descriptions of Gage*. Next, Gage asks the Court to prohibit the Government and its witnesses from describing her as "violent, "prone to anger," or likely to "assault, rob, and possibly shoot" people because it is character opinion barred by Rule 404(a). Dkt. No. 446 at 4. The Government has not responded to this request. As a reminder, Rule 404(a) bars admission of character evidence if it is offered "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). However, character evidence can be offered for a non-propensity purpose, so there may be scenarios where this evidence could be admissible. *See* Fed. R. Evid. 404(b). Consequently, the Court is hesitant to bar this evidence

without further context and without knowing the purpose offered. So, for now, this request is DENIED. Gage may raise this objection at the appropriate time at trial.

*Inflammatory Labels*. Gage further seeks to prohibit the Government from using labels such as "pimp," "madam," "trafficker," "victim," "minor victim," "sex trafficking operation," "STO," "organization," and "OCDETF." Dkt. No. 446 at 4. The Government opposes most of these challenges. Dkt. No. 467 at 8-9.

For "trafficker," "victim," and "minor victim," the Court incorporates its above analysis of Ruff's Motion. Accordingly, the Government may only use those terms in closing arguments. This does not preclude the Government from referring to those minor victims' ages or calling them "minors" during opening and closing arguments and throughout the presentation of evidence.

For "pimp" and "madam," the Government points out that Gage regularly referred to herself by these terms. Dkt. No. 467 at 8. Indeed, Gage apparently filmed herself advertising "Pinky's pimpin' and hoein' service," and adding the slogan: "you got the dough, I got the hoes." *Id.* In written communications, she also explains what it means to be a "madam." *Id.* The Court agrees this evidence is highly relevant to Gage's role in the conspiracy, so the Government may introduce evidence that Gage used these terms. However, the Government cannot refer to her as a "pimp" or "madam."

Next, the Government has no issue disregarding the terms "sex trafficking operation" and "STO." Dkt. No. 467 at 8-9. But it contends that it can use the term "organization" to describe the conspiracy. The Court agrees. There is nothing per se prejudicial about "organization," and Gage provides no argument to the contrary. Accordingly, the Government may use this term.

Finally, Gage objects to the term "OCDETF," which the Court believes is a reference to the "Organized Crime Drug Enforcement Task Force," a federal cross-agency criminal

investigation program consisting of prosecutors, federal agents, and state and local law enforcement.[7] Gage provides no reason why the official name of a federal program should be excluded under Rule 403, especially if its abbreviation is explained to the jury. So, the Government and its witnesses may use this term as well.

*Overview and Narrative Testimony*. Gage also argues that the Government's witnesses "should not give overview or narrative testimony summarizing the investigation, or interpret messages based on 'training and experience,' except through a qualified and properly disclosed expert. Dkt. No. 446 at 4. Gage has already presented these arguments in a separate objection to the Government's expert notices, which the Court addressed in a separate order. *See* Dkt. No. 505.

**3. Foundation for Accounts, Phones, and Aids**

Gage seeks two orders regarding the laying of a foundation. First, she asks that "[b]efore any advertisement, account, phone number, or message is attributed to Ms. Gage in front of the jury, the government should lay a foundation outside the jury's presence." Dkt. No. 446 at 4-5. However, Rule 104(c) requires a hearing on a preliminary question outside the jury's presence when (1) the hearing involves the admissibility of a confession; (2) a defendant in a criminal case is a witness and so requests; or (3) justice so requires. Fed. R. Evid. 104(c). Gage does not argue why any of these scenarios apply. So, the Court agrees that the Government should lay a proper foundation, but at this time, the Court finds no reason to order an independent hearing on this issue.

Second, Gage asks that "[a]ny reference to a website's suspicion that an unidentified video depicted a juvenile should be excluded." Dkt. No. 446 at 5. Gage does not explain what this

[7] *See About OCDETF*, U.S. Dep't of Just. (last updated Oct. 31, 2025), https://www.justice.gov/archives/ocdetf/about-ocdetf.

evidence is or why it should be excluded. Because this request is too vague and conclusive for the Court to grant relief, this request is DENIED. Gage may reraise this request at trial.

**4. Joint-Trial Protections**

Next, Gage requests several orders regarding limiting instructions, co-defendant statements, and co-defendant guilty pleas.

*Limiting Instructions*. Gage asks the Court to issue limiting instructions concerning seven categories of evidence attributable to other Defendants. Dkt. No. 446 at 5. As stated earlier, the Court generally agrees with the parties that limiting instructions are suitable to curtail any prejudice or "spill over" effect. To aid the Court's decision concerning these seven categories, the Court orders the parties to confer on limiting instructions for these seven categories of evidence and present a report of conferral and proposed limiting instructions forthwith. Until then, the Court holds this request IN ABEYANCE.

*Co-Defendant Statements*. Second, Gage argues that a co-defendant's out-of-court testimonial statement referring to Gage should be excluded unless the co-defendant testifies, or the statement is redacted and a limited instruction given. Dkt. No. 446 at 6. The Court will issue a separate Order on this issue while addressing the Government's *James* proffer.

*Co-Defendant Guilty Pleas*. Third, Gage contends that "[t]he guilty pleas of co-defendants Bell and Melton may not be offered as evidence of Ms. Gage's guilt. If they are used to assess credibility, the jury should be instructed accordingly." Dkt. No. 446 at 6. This request is GRANTED. *See Nickl*, 427 F.3d at 1294 n. 2.

**5. Hearsay and Confrontation**

Next, Gage argues that "[o]ut-of-court statements of witnesses recorded in police reports, forensic interviews, or tribal and police interviews should not be offered for their truth unless the

declarant testifies or a hearsay exception is established." Dkt. No. 446 at 6 (citing *Crawford v. Washington*, 541 U.S. 36 (2004)). Gage does not provide any specific evidence for the Court to rule on. To the extent Gage asks the Court to rule on any such evidence, this request is better suited for trial. Accordingly, it is HELD IN ABEYANCE.

**6. Custody Status and Sequestration**

Finally, Gage moves for an order allowing Gage to attend trial in civilian clothing, allowing Gage to attend trial without visible restraints, redacting any reference to Gage's custodial status in jail calls admitted against her, and sequestering witnesses under Rule 615. Dkt. No. 446 at 6-7.

*Custodial Status*. The Government agrees that Gage can attend trial in civilian clothing, and the Court will allow her to do so without visible restraints. Dkt. No. 467 at 12. So, those requests are GRANTED.

The Government also agrees not to generally highlight Gage's custodial status. *Id.* But, the Government seeks to introduce video recordings of the Defendants' jail calls. *Id.* And even though the Government can redact the introductions of these jail calls—which identify the calls as coming from a detention facility—the Government argues it would be "impractical and confusing" to redact the portions of these calls depicting the Defendants in jail clothes. *Id.* The Government also maintains that "any additional redactions will take the calls out of context and would also be misleading and confusing to the jury." *Id.*

Gage does not challenge the relevancy of these jail calls. And, several courts have held that a defendant's jail calls may be admitted, even when they identify the defendant's custodial status. *See, e.g.*, *United States v. Arayatanon*, 980 F.3d 444, 450 (5th Cir. 2020); *United States v. Johnson*, 624 F.3d 815, 822 (7th Cir. 2010). This is because "the occasional reference to the fact that [the defendant] had at some point been in jail is quite different than the 'constant reminder of

the accused's condition implicit in such distinctive, identifiable attire' that underlies the injustice inherent in requiring a defendant to stand trial in prison garb." *Johnson*, 624 F.3d at 821–22; *see also Arayatanon*, 980 F.3d at 450 ("The admission of [defendant's] jail calls did not pose the same constant and visible risk of prejudice as shackling, prison garb or other external signs of a defendant's incarceration or perceived threat to the community at large."). The Court finds these authorities persuasive. Indeed, the prejudice of knowing that Gage was incarcerated sometime in the past does not substantially outweigh the relevancy these calls may have. So, the Government is not required to redact jail call footage showing Gage in custody, but it should refrain from generally referring to Gage's custodial status. Accordingly, Gage's request is GRANTED IN PART and DENIED IN PART. Gage may also request a limiting instruction stating that the jury cannot infer that she is guilty based on her prior incarceration.

*Sequestration of Witnesses*. Gage requests the sequestration of witnesses from the courtroom, "except one designated case agent." Dkt. No. 446 at 7. Under Rule 615, "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615(a). "But this rule does not authorize excluding . . . (4) a person authorized by statute to be present." *Id.* "One such statute is the [Crimes Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771], which grants crime victims '[t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.' " *United States v. Maldonado-Passage*, 4 F.4th 1097, 1102 (10th Cir. 2021) (quoting 18 U.S.C. § 3771(a)(3)). "Accordingly, the default rule under the CVRA is that a crime victim may be present in the courtroom to hear other witnesses testify." *United States v. Hill*, No. 24-CR-073-JFH, 2025 WL 3002199, at *2 (E.D. Okla. Oct. 27, 2025). "The burden

thus falls to [Gage], as the party seeking to exclude the victim-witnesses from the courtroom, to present clear-and-convincing evidence that their testimony will be materially altered if they are permitted to hear other witnesses testify at trial." *Id.* Gage has not attempted to meet this burden.

Accordingly, the Court DENIES her request to sequester victim-witnesses. However, the Court GRANTS her request as it pertains to other witnesses that can be sequestered under Fed. R. Evid. 615(a)(1)-(4).

**D. DEFENDANT WILLIAMS'S MOTION IN LIMINE [Dkt. No. 447]**

Defendant Williams moves to exclude five categories of evidence: (1) his gang affiliation; (2) uncharged "bad acts" for which notice was not given; (3) his criminal history because he is stipulating to his felony status pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997) for Count Sixteen; (4) his co-defendants' out-of-court statements referring to him; and (5) his custodial status. Dkt. No. 447 at 1-2.

The Government agrees not to introduce evidence for most of these categories. For instance, the Government will not introduce evidence of Williams' alleged gang affiliation in its case-in-chief, nor will the Government reference his uncharged "bad acts." Dkt. No. 467 at 4. The Government also accepts Defendant Williams' *Old Chief* stipulation and will not elicit testimony or reference the details of those histories. *Id.* So, these requests are GRANTED.

The Court will issue a separate Order on the admissibility of co-conspirator statements against Williams regarding the Government's James *proffer*. So, this request is HELD IN ABEYANCE.

Finally, the Government generally agrees not to highlight William's custodial status and agrees that he should appear in civilian clothing. *Id.* at 12. However, as explained above, the Government seeks to introduce recordings of the Defendants' jail call statements, including

Williams. *Id.* The Court incorporates its earlier analysis on this issue and holds that the Government is not required to redact jail call footage showing Williams in custody. But, it should refrain from generally referring to Williams's custodial status. So, this request is GRANTED IN PART and DENIED IN PART.

## CONCLUSION

IT IS THEREFORE ORDERED that the Government's Motion in Limine [Dkt. No. 440] is GRANTED.

IT IS FURTHER ORDERED that Defendant Ruff, Gage, and Williams's Motions in Limine [Dkt. Nos. 439, 446, 447] are respectively GRANTED IN PART, DENIED IN PART, and HELD IN ABEYANCE IN PART.

Dated this 13th day of November, 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE